# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| Slade | Civil Action No. 6:11-cv-2164 |
| versus | Judge Michael J Juneau |
| Progressive Security Insurance Co | Magistrate Judge Carol B Whitehurst |

## REPORT AND RECOMMENDATION

Before the Court, on referral from the district judge, is a Motion To Decertify The Class filed by Defendant Progressive Security Insurance Company ("Progressive"), [Rec. Doc. 252-1], Plaintiffs' Memorandum in Opposition to Progressive's motion [Rec. Doc. 272-1], and Progressive's Reply thereto [Rec. Doc. 276-1]. Based on the foregoing, the Court recommends that the Motion be denied.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, Cheryl Slade, ("Slade"), was involved in an automobile accident on February 12, 2011. At that time, Slade's vehicle, a 2005 Volvo S40, was covered under an insurance policy issued to Slade by Progressive (the "Policy"). *R. 1-2, ¶¶ 7 and 81*. Slade made a claim against Progressive seeking recovery under the collision portion of the Policy to recover for the damage to her vehicle. *Id*. Slade's vehicle was determined by Progressive to be a total loss. Slade alleges the National Automobile Dealers Association ("NADA") and the Kelly Blue Book ("KBB")

Valuation Reports valued her vehicle at approximately $8,000.00. Using a product called Work Center Total Loss ("WCTL") licensed from Mitchell International, Inc. ("Mitchell"), however, Progressive found the value of Slade's vehicle to be approximately $5,100.00 and tendered this amount to Slade. *Id. at ¶ ¶ 8, 10 and 11*.

On November 10, 2011, Plaintiff filed this action in the Fifteenth Judicial District Court, Lafayette Parish, Louisiana. *R. 1-2*. Progressive removed the action to this Court. *Id.* Plaintiff contends that the WCTL used by Progressive results in unfairly low valuations of vehicles and (1) is not allowed under La. R.S. 22:1892B(5)(b)[1] and (2) is arbitrary and capricious because the base values are derived from vehicles with varying and unknown conditions. Plaintiff seeks to recover damages for breach of insurance contract, violation of Louisiana statutory

---

[1] LA R.S. 22:1892B(5)(b) provides:

(5) When an insurance policy provides for the adjustment and settlement of first-party motor vehicle total losses on the basis of actual cash value or replacement with another of like kind and quality, and the insurer elects a cash settlement based on the actual cost to purchase a comparable motor vehicle, such costs shall be derived by using one of the following:

...

(b) The retail cost as determined from a *generally recognized used motor vehicle industry source*; such as, an electronic database, if the valuation documents generated by the database are provided to the first-party claimant, or a guidebook that is available to the general public. If the insured demonstrates, by presenting two independent appraisals, based on measurable and discernable factors, including the vehicle's preloss condition, that the vehicle would have a higher cash value in the local market area than the value reflected in the source's database or the guidebook, the local market value shall be used in determining the actual cash value.

2

law, La. R.S. 22:1892(B)(5)(b), and statutory penalties and attorney's fees under La. R.S. 22:1973(A) and (B)(5).[2]

On August 19, 2014, Plaintiff, Cheryl Slade. filed a Motion For Class Certification. *R. 103.* On September 16, 2014, then District Judge Richard T. Haik, Sr., conducted a hearing on Plaintiff's Motion. *R. 124.* In its ruling filed on October 31, 2014, Judge Haik granted Plaintiff's motion, finding that she met her burden under F.R.C.P. 23. *R. 136.*

Progressive appealed Judge Haik's ruling and on May 31, 2017, the Fifth Circuit issued a judgment which, with the exception of Plaintiff's fraud allegation, affirmed the ruling as to Class Certification. *R. 142.* The Fifth Circuit's Judgment noted, however, that counsel for Progressive had suggested at oral argument that the class representative was not adequate because the representative had purportedly waived potential challenges to the individual condition determination of Progressive adjusters. The Fifth Circuit remanded the matter to this Court to address the waiver issue raised by Progressive.

A hearing was conducted on September 26, 2017. The Court's ruling issued on October 2, 2017, ordered that the parties were to submit a joint proposal of notice and op-out procedure to address the Fifth's Circuit concern. *R. 164.* Progressive

---

[2] The Court will not repeat the factual details as the original ruling on class certification [Rec. Doc.136] provides a full discussion of the facts and circumstances surrounding this claim.

appealed the Court's ruling and District Judge Dee D. Drell was assigned to proceed over the appeal. *R. 172.* On September 16, 2018, Judge Drell denied Progressive's appeal of this Court's ruling. *R. 200.* The parties' Joint Notice Plan was filed into the record on October 3, 2018. *R. 204.*

Following Progressive's second appeal to the Fifth Circuit, this case was re-assigned to District Judge Michael J. Juneau. *R. 208*. On August 2, 2019, the Court set the trial of this matter and ordered the parties' to conduct discovery and prepare the case for trial under a joint Scheduling Order. On July 13, 2020, Progressive filed the instant Motion.

## II. CONTENTIONS OF THE PARTIES

Progressive contends Plaintiffs' representation that their damages can be determined by comparing the vehicle's WCTL value to the vehicle's NADA value, already in Progressive's computer records, has been debunked because discovery has shown that the actual NADA "clean" retail values for the vehicles are not in Progressive's computer. Progressive further contends that Plaintiffs' experts have provided no methodology to adjust the value of each of the vehicles based on their condition. They argue Plaintiffs have failed to propose a common method for determining which class members were injured by Progressive's use of WCTL or

4

for calculating the amount of individual class member's damages. Progressive moves to decertify the class because the individualized issues defeat predominance.

Plaintiffs maintain that the only change in circumstances from the Court's order certifying this class action and the Fifth Circuit's affirmation is their discovery that the NADA values in Progressive's records are "significantly lower" than the actual NADA "clean" retail values. Despite the fallacy of Progressive's NADA values, Plaintiffs assert that "clean" NADA values can be obtained by analyzing data in the WCTL reports. Plaintiffs further assert that their method of adjusting for condition remains that presented in their original class certification motion —using the condition rating in the WCTL to adjust NADA clean retail. Ultimately, Plaintiffs maintain their experts have found that 69.2% of class members (more than 29,000 individuals) have received a WCTL base value lower than the NADA base value, resulting in aggregate under-valuations of 32 - 39 million dollars.

### III.   LAW AND ANALYSIS

A.   <u>Burden of Proof and Standing</u>

The Court will initially address the issues raised by Progressive of (1) burden of proof and (2) lack of standing. Progressive concedes that these issues are not clearly decided in the law.

*1. Burden of Proof*

Progressive contends that Plaintiffs' have the burden to prove that Progressive's motion to decertify should not be granted. While the proponent of a motion generally bears the initial burden of showing that the motion should be granted, *see, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 323, (1986) (holding that party moving for summary judgment always bears the initial burden of demonstrating the basis for its motion), it appears that courts are divided on this question. Progressive cites the Ninth Circuit's decision in *Marlo v. United Parcel Service, Inc.*, 639 F.3d 942 (9th Cir. 2011), which held "[t]he standard is the same for class decertification as it is with class certification.... the party seeking class certification, bears the burden of demonstrating that the requirements of Rules 23(a) and (b) are met." *Id.* at 947. Plaintiffs cite the Eighth Circuit's opinion in *Day v. Celadon Trucking Services, Inc.*, 827 F.3d 817, 831 (8th Cir. 2016), which reviewed numerous court's holdings and held that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again."[3] The Court will address the issue as follows.

---

[3] In *Day*, the Eighth Circuit noted as follows: "the Fifth Circuit touched on this question in dicta buried in a footnote. *See Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 932 n.3 (5th Cir. 2005) ("Although the defendants may be correct in noting that the burden of persuasion shifts from plaintiffs (to show the merits of certification) to defendants (to show the merits of decertification), the difference is irrelevant."). Certain district courts have placed a "'heavy burden'" on defendants moving for decertification or even moving to limit the scope of a class. *Hammer v. JP's Sw. Foods, L.L.C.*, 2011 WL 183972, at *2 (W.D. Mo. Jan. 19, 2011) (quoting *Gonzales v. Arrow Fin. Servs. LLC*, 489 F.Supp.2d 1140, 1154 (S.D. Cal. 2007); *citing Gordon v. Hunt*, 117 F.R.D. 58, 61 (S.D.N.Y. 1987)). But see *Stepp*

"An order that grants ... class certification may be altered or amended before final judgment," Fed. R. Civ. P. 23(c)(1)(C), and the Court has a continuing duty to assure compliance with Rule 23 after certification, *see Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986). While the party seeking class certification bears the burden of showing that Rule 23's requirements are satisfied when it is initially sought, *see Wal-Mart Stores*, *Inc. v. Dukes*, 564 U.S. 338, 350 (2011), a party moving for decertification typically bears "a more onerous burden" of showing decertification is warranted when "the initial certification decision was carefully considered and made after certification-related discovery," as was the case here. *See Day*, 827 F.3d at 832 & n.9. (Nevertheless, a district court "has the discretion to decertify a class by amending the order granting the certification if the court finds that certification should not have been granted or is no longer appropriate." *East Maine Baptist Church v. Union Planters Bank, N.A.*, 244 F.R.D. 538, 541 (E.D. Mo. 2007)). "In considering a defendant's motion for decertification, the Court follows the legal standard required for class certification." *Id*.

Accordingly, as provided by the foregoing, regardless of whether the burden on a motion to decertify rests with the Plaintiffs or Progressive, the Court must

---

*v. Monsanto Research Corp*., 2012 WL 604328, at *3 & n.3 (S.D. Ohio Feb. 24, 2012) (reversing its earlier holding that defendant had the burden to prove decertification and concluding the plaintiffs retain the burden of establishing class requirements in order to survive a motion for decertification); *D.G. ex rel. Strickland v. Yarbrough*, 278 F.R.D. 635, 637 (N.D. Okla. 2011) (noting the plaintiff acknowledged it retained the burden).

accept as true the facts pleaded in the complaint and focus its inquiry as to whether or not the requirements of Rule 23 have been met. *See Baldridge,* 404 F.3d at 932 n.3 ("A decertification decision would be a revision of the original order, so concerns regarding differing burdens of proof do not overcome the overriding interests of the final-judgment rule—preventing the hazard of piecemeal appeals that burden the efficacious administration of justice and unnecessarily protract litigation.").

2. *Standing*

"[T]o avoid a dismissal based on a lack of standing, the court must be able to find that both the class and the representatives have suffered some injury requiring court intervention." 7 AA Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Fed. Prac. & Proc. Civ.3d § 1785.1 (2005). Progressive asserts that class certification is inappropriate because "Plaintiff's own sampling and analysis" has revealed that "nearly a third of class members received WCTL base values that were higher than the NADA clean retail values for their total-loss-vehicles." Progressive argues that these class members are therefore left without any monetary damages. Thus, Progressive argues, "a substantial number of class members" have not suffered any money loss and lack standing.

Contrary to Progressive's argument, the Fifth Circuit does not take such a "cramped view of standing.... injury need not be monetary or tangible." *Bertulli v. Independent Ass'n of Continental Pilots*, 242 F.3d 290, 295 (5th Cir. 2001). Under Plaintiffs' theory, "every class member has an injury in fact, because every class member had their total loss claim adjusted using the unlawful system." In other words, each suffered a legal injury—breach of contract—regardless of the payment using the WTCL.[4] The Joint Notice Plan filed by the parties states that this action "includes all named Louisiana Progressive Security Insureds who received payment for total loss motor vehicles located in the State of Louisiana, under the terms of their collision automobile insurance policy with Progressive Security Insurance Company, utilizing the Mitchell Work Center Total Loss (WCTL) system, from July 1, 2010 to the date of notice of class certification." *R. 204-1*.

Plaintiffs argue that "an overwhelming majority of the class have suffered actionable damages." Specifically, they represent that "69.2 % of class members, nearly 30,000 individuals, have suffered losses of approximately $35.5 million." *R. 272-1, p. 19*. They further assert that if WCTL is proven to be unlawful, then all class members would, at the very least, have "claims for the cost of having their vehicles evaluated under a method that complies with La. R.S. 22:1892B(5)." *Id.*

---

[4] In support, Plaintiffs cite *Denny v. Deutshce Bank*, 443 F.3d 253, 261 (2d Cir. 2006) ("An injury-in-fact need not be capable of sustaining a valid cause of action under applicable tort law.").

9

Moreover, although couched in terms of Article III standing, Progressive's arguments go to the merits of Plaintiffs' case. "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). A failure on the merits does not affect a class member's individual standing. 1 Steven S. Gensler & Lumen N. Mulligan, *Federal Rules of Civil Procedures*, Rules and Commentary, Rule 23 (2020) ("[If] it turns out that some members of the class are not entitled to relief, that represents a failure on the merits, not the lack of a justiciable claim."). *See, e.g.*, *Vogt v. State Farm Life Insurance Company*, 963 F.3d 753, 766–67 (8th Cir. 2020).

In *Vogt*, State Farm sought decertification of a class which included members who obtained State Farm life insurance under the same policy form. State Farm argued that some class members lacked standing because they received a credit from State Farm during the period in which the alleged "cost of insurance" overcharges occurred and that this credit created a set-off that left the class members without any damages. The court found State Farm's argument "unpersuasive," explaining:

10

> Although couched as disputes about standing, State Farm's arguments really go to the merits of plaintiffs' claims. Under plaintiffs' theory, all individuals who received an improperly-depreciated ... payment suffered a legal injury—breach of contract—regardless of whether the ... payment was more than, less than, or exactly the same as the ultimate cost of repairing or replacing their property. [A] party to a breached contract has a judicially cognizable interest for standing purposes, regardless of the merits of the breach alleged.

*Id*. at 377.

Judge Haik and the Fifth Circuit determined that this case should be certified despite the possibility that some members of the class have not been injured. The Court agrees.

B.  Whether Predominance Exists

Progressive contends that since the Court's ruling which granted class certification in this case, discovery revealed that the NADA values contained in Progressive's files were not "NADA clean retail values." It argues that without the clean NADA values any determination that Progressive paid the class member less than the "actual cash value" of the subject vehicle would have to be done manually for each of the 40,000 members. Progressive contends that this cannot be done and Plaintiffs have not proposed an alternative. It argues that these individualized issues predominate over class issues thereby defeating Rule 23's predominance requirement.

11

Rule 23(a) provides four prerequisites to a class action: (1) a class "so numerous that joinder of all members is impracticable"; (2) "questions of law or fact common to the class"[5]; (3) named parties' claims or defenses "typical ... of the class"; and (4) representatives that "will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 606–08 (1997). "[A] party seeking class certification under Rule 23(b)(3) must also demonstrate both (1) that questions common to the class members predominate over questions affecting only individual members, and (2) that class resolution is superior to alternative methods for adjudication of the controversy." *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 601 (5th Cir. 2006). Whether common issues predominate and whether the class action is a superior method to resolve the controversy requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case. *Castano v. American Tobacco Co.*, 84 F.3d 734, 744 (5th Cir.1996). Although the Supreme Court has directed courts to be "rigorous" in reviewing a motion for class certification, which "may entail some overlap with the merits of the plaintiff's underlying claim," courts should not

---

[5] In order to demonstrate commonality, all of the class members' claims "must depend on a common issue whose resolution will resolve an issue that is central to the validity of each one of the class member's claims in one stroke." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 547 (5th Cir. 2020).

12

"engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. at 466.

"[I]n determining predominance, the district court must "give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods, Inc. v. Bouaphakeo*, —— U.S. ——, 136 S.Ct. 1036, 1045 (2016) "An individual question is one where 'members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.' " *Id*. (quoting 2 William B. Rubenstein, Newberg on Class Actions § 4:50, pp. 196–97 (5th ed. 2012)). When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson*, at 1045 (quoting 7AA C. Wright, A. Miller, & M. Kane, *Federal Practice and Procedure* § 1778, pp. 123–124 (3d ed. 2005)).

Here, Plaintiffs have continually asserted that all issues in this action susceptible of common resolution will be addressed in the "common issues trial." They maintain that these common issues include: "whether WCTL is allowed under

13

La. R.S. 22:1892B(5); whether La. R.S. 22:1892B(5) allows negative conditioning; whether WCTL's use of condition to reduce values derived from so-called comparables of unknown condition is arbitrary and capricious; whether Plaintiffs can meet their burden to show damage by substituting NADA retail values for WCTL base values; whether Progressive's use of WCTL was in bad faith; the amount of penalty appropriate for such bad faith under La. R.S. 22:1973C; whether class members who do not prove an undervaluation are entitled to penalties under §1973C; and the amount of aggregate damages and/or penalties due to the class of 42,000 members." *R. 272-1, p. 10.* They contend that after the common issues trial, resolution of individual entitlement will be achieved by an "administrative process" in which the common issues findings will be applied to individual class members' claims using data available in Progressive's own electronic records. This process was acknowledged in Judge Haik's ruling,[6] which was affirmed by the Fifth Circuit.[7]

Plaintiffs now assert that the only change in circumstances since the original certification is that the NADA values contained in Progressive's files are "unreliably low." Plaintiffs further assert that since the original class certification,

---

[6] "Once the common questions of fact have been resolved, any remaining issues can be resolved by reference to Progressive's own computer data." *Slade v. Progressive Sec. Ins. Co.,* 2014 WL 6484588, at *8 (W.D.La.,2014).

[7] "[F]or essentially the reasons stated by the district court, that Plaintiffs' damages methodology does not preclude class treatment." *Slade v. Progressive Security Insurance Company*, 856 F.3d 408, 411 (5th Cir. 2017).

they have explained that "to the extent condition needs to be considered, it can be accomplished by applying Progressive's own condition adjustments (contained in Progressive's records) to NADA retail values." Plaintiffs state they continue to proffer the same method for adjusting for condition that was presented in their original class certification motion and appellee brief as described by the Fifth Circuit—using Progressive's "own condition adjustment scores ... to adjust base values derived from NADA or KBB." *Slade v. Progressive Security Insurance Company*, 856 F.3d 408, 411 (5th Cir. 2017) ("by essentially rerunning Defendant's calculation of actual cash value but with a lawful base value, Plaintiffs' damages theory only pays damages resulting from the allegedly unlawful base value."). Plaintiffs contend, while applying Progressive's own condition adjustments to newly obtained individual clean NADA values may be more time-consuming and costly, it is not unmanageable.

While Progressive argues that using the clean NADA values to calculate members damages will require individualized inquiries and destroy predominance, the Court finds that the same reasoning used by the district court and the appellate court continues to apply to the issue of predominance. Finding that Plaintiffs' damages methodology did not preclude class treatment, the Fifth Circuit stated:

> Here, Plaintiffs' liability theory is that Defendant unlawfully used WorkCenter Total Loss (WCTL) to calculate the base value of total

15

> loss vehicles. Plaintiffs claim that using WCTL, instead of lawful sources such as the National Automobile Dealers Association (NADA) Guidebook or the Kelly Blue Book (KBB), resulted in their vehicles being assigned a lower base value and accordingly resulted in Plaintiffs receiving lower payouts on their insurance claims.

*Slade*, 856 F.3d at 411.

Moreover, "[C]ourts in every circuit have uniformly held that the 23(b)(3) predominance requirement is satisfied despite the need to make individualized damage determinations." 2 William B. Rubenstein, Newberg on Class Actions § 4:54 (5th ed. 2020). Plaintiffs' cite *Mitchell v. State Farm Fire Co.*, 954 F.3d 700 (5th Cir. 2020), as "the recent Fifth Circuit holding most pertinent to this case."[8] In *Mitchell*, the issue before the Fifth Circuit was whether State Farm breached Plaintiffs' standard-form contracts by deducting labor depreciation from their "actual cash value" payments. The court affirmed certification of a class of over 10,000 insurance claimants in which determination of individual damages could take as long as 15-20 minutes per claim. *Id.*; *see also Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 376 (8th Cir. Dec. 6, 2018) (citing *Tyson*, 136 S.Ct. at 1045) ("The potential need for individualized damages inquiries is not sufficient to overcome the district court's findings of predominance and superiority."); *In re*

---

[8] While the Court reminded the parties of the recently decided Fifth Circuit case, *Chavez v. Plan Benefit Services, Inc.* 957 F.3d 542, (5th Cir. 2020), Progressive did not cite the case and Plaintiffs maintain that *Chavez,* involved ERISA claims substantially different from those at issue in this case. Plaintiffs' note that Judge Graves, a panel judge on *Chavez,* was also on the panel which affirmed certification in this case

*Deepwater Horizon*, 739 F. 3d 790, 815 (5th Cir. 2014) ("wide disparity among class members as to the amount of damages does not preclude class certification and courts, therefore, have certified classes even in light of the need for individualized calculations of damages"); *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) (predominance satisfied in breach of warranty case despite individualized damages where there was a "single, central, common issue of liability").

In support of its assertion that the need to review individual files is detrimental to class certification, Progressive cites *Sandusky Wellness Ctr., L.L.C. v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460 (6th Cir. 2017) and *Benvanides v. Chicago Title Ins. Co.*, 636 F.3d 699 (5th Cir. 2011). In *Sandusky*, the Sixth Circuit found that the trial court was within its discretion to deny certification, because the main inquiry in the case would be the question of whether class members had consented to receive unsolicited faxes. Resolving this issue would require cross-checking class membership against 450,000 solicitation consent forms, and identification of class members would require submission of an affidavit by each class member to establish that they had even received a fax from the defendant. Similarly, the *Benvanides* court found that denial of certification was within the trial court's discretion because certification of the class would require an extensive file-

17

by-file review to determine the factual details as to each plaintiff, and there were no class-wide questions that would benefit from class determination. *Id.* at 700. The Court finds that neither *Benvanides* nor *Sandusky* stands for the proposition that the need to review individual files stands as a bar to certification. Importantly, the Fifth Circuit rejected this very proposition in *Mitchell*, supra., decided after both of these cases.

Finally, Progressive contends that Plaintiff are apparently attempting to overcome their failure to obtain NADA clean retail values for all class members by using statistics to prove individual entitlements. Plaintiffs argue Progressive erroneously suggests that they are proposing to use statistics to prove individual member's entitlements. Plaintiffs argue instead they are proposing to use statistics to prove "the common question of aggregate damages, after which determination, individual entitlements will be established by obtaining and comparing NADA values to WCTL." *R. 272-1, p. 26.*

"The use of aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself." *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 582 F.3d 156, 197 (1st Cir.2009) (citing Newberg on Class Actions § 10.5, at 483–86 (4th ed. 2002) ("Aggregate computation of class monetary relief is lawful and proper.). Here, Plaintiffs are not

18

trying to prove individual entitlements through statistics. Plaintiffs are proposing to use statistics to prove the common question of aggregate damages, after which determination, individual entitlements will be established by obtaining and comparing the NADA value for each member's vehicle to the WCTL values.

## CONCLUSION

After due consideration, the Court is of the opinion that Defendant's Motion should be denied. Plaintiff's original motion for class certification demonstrated that the class fulfills the Rule 23(a) requirements of numerosity, typicality, commonality, and adequacy and Plaintiff has satisfied the Rule 23(b)(3) requirements of predominance and superiority. While ascertaining the actual damages for some class members may entail an individualized inquiry, those class members can be easily identified and the calculations will not be complex. As such, common issues predominate and class action is the superior method for resolving class members' claims. Thus,

**IT IS RECOMMENDED** that the Motion To Decertify The Class filed by Defendant Progressive Security Insurance Company [Rec. Doc. 252-1] be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this

report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** this 20th day of October, 2020.

_____
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE